UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALERIE N. MORRIS, | : | |
| Plaintiff | : | |
| | : | No. 4:10-CV-2206 |
| v. | : | |
| | : | (Judge Nealon) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : : : | |
| Defendant | : | |

FILED
SCRANTON
DEC 01 2011
PER ⁄M.b.P.
DEPUTY CLERK

## MEMORANDUM AND ORDER

### Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") which denied Valerie N. Morris's claim for child and adult supplemental security income benefits (SSI). Morris was born in the United States on May 19, 1989. Tr. 71.[1] Her application for supplemental security income benefits was protectively filed[2] by her mother on January 16, 2007. Tr. 56, 71 and 109. Morris attained the age of 18 on May 18, 2007, during the pendency of the administrative proceedings. Morris contends she is disabled because of a mood disorder, a learning disorder, headaches, and back and neck pain. Doc. 13, Plaintiff's Brief, p. 1. For the reasons set forth below we will affirm the decision of the Commissioner.

The Social Security Act authorizes several classes of disability benefits, including child supplemental security income benefits and adult supplemental security income benefits. Supplemental security income is a federal income supplement program funded by general tax

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on December 22, 2010.

2. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

In order to be entitled to child SSI benefits, the applicant must establish that he or she was disabled prior to turning 18 years of age as the result of a physical or mental impairment, that the impairment resulted in marked and severe functional limitations, and that the impairment was expected to result in death or had lasted or was expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

To receive adult SSI benefits, the applicant must demonstrate and "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In the application for SSI benefits, Morris alleged that she became disabled on January 16, 2006. Tr. 16, 71 and 114. Morris's alleged disability onset date has no impact on Morris's application for SSI because SSI is a needs-based program and SSI benefits cannot be paid for "any period that precedes the first month following the date all conditions for eligibility are met." 20 C.F.R. § 416.501. Consequently, Morris is not eligible for SSI benefits for any period prior to February 1, 2007.

2

Morris's claim for supplemental security income benefits was initially denied by the Social Security Administration on October 29, 2007. Tr. 56-60. On November 14, 2007, Morris requested a hearing before an administrative law judge. Tr. 61-63. After approximately 15 months had passed, a hearing was held before an administrative law judge on February 3, 2009. Tr. 26-42. On February 12, 2009, the administrative law judge issued a decision denying Morris's claim for child and adult SSI benefits. Tr. 10-25. On March 4, 2009, Morris filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 4-6. After approximately 17 months had passed, the Appeals Council on August 27, 2010, concluded that there was no basis upon which to grant Morris's request for review. Tr. 1-3. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On October 26, 2010, Morris filed a complaint in this court requesting that we reverse the decision of the Commissioner denying her child and adult SSI benefits. The Commissioner filed an answer to the complaint and a copy of the administrative record on December 22, 2010. Morris filed her brief on March 11, 2011 and the Commissioner filed his brief on April 12, 2011. The appeal[3] became ripe for disposition on April 29, 2011, when Morris elected not to file a reply brief.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from

its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

There are different evaluation processes for determining entitlement to child SSI benefits and adult SSI benefits.

**Child SSI Benefits**

The Commissioner utilizes a three-step process in evaluating childhood disability claims. See 20 C.F.R. § 416.924. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[4] (2) has an impairment that is severe or a combination of impairments that is severe,[5] and (3) has an impairment or combination of impairments that meets, medically equals, or functionally equals one of the Listing of Impairments contained in Appendix 1 to 20 C.F.R. Part 404, Subpt. P (the "Listings"). 20 C.F.R. § 416.924(d).

---

4. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

5. If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled and the sequential evaluation proceeds no further.

If the claimant has an impairment or combination of impairments that causes marked and severe limitations of function which meet, medically equal, or functionally equal a listed impairment, the regulations direct a finding of disabled. Id.

In determining whether a claimant's impairments are of sufficient severity to make the claimant eligible for child supplemental security income benefits, the Social Security Act requires the Commissioner to consider the combined effect of all of the claimant's impairments, without regard to whether any single impairment alone would be sufficient to find the claimant disabled. Once the claimant's impairments are established by the medical evidence, the Commissioner is required to consider the combined effect of these impairments throughout the disability determination process. Id.

Where a child claimant has an impairment, or combination of impairments, that meets or fulfills the requirements of one of the Listings, the regulations direct a finding of disabled. 20 C.F.R. § 416.924(d). To medically equal a Listing, a child must have an impairment, or combination of impairments, that is similar to the requirements described in any Listing. Id.

To functionally equal a listing, the child's impairment or impairments must either impose marked limitations in at least two, or extreme limitations in at least one, of the following six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) physical health and well-being. 20 C.F.R. 416.926a(b)(1) and (d). The regulations also require the Commissioner to consider the cumulative and interactive effect of multiple impairments within and between the domains of functioning. 20 C.F.R. §416.926a(c) ("Any given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments.").

> The regulations define "marked" limitation in pertinent part as follows:
>
> [Y]ou have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limit only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(I). With regard to the domain of "health and physical well-being," a claimant can have a "marked" limitation if the claimant is "frequently ill because of [the claimant's] impairment(s) or [has] frequent exacerbations of [the claimant's] impairment(s) that result in significant, documented symptoms or signs." Id., (iv).[6]

> The regulations define "extreme" limitation in pertinent part as follows:
>
> [Y]ou have an extreme limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(I). With regard to the domain of "health and physical well-being," a claimant can have an "extreme" limitation if the claimant is "frequently ill because of [the claimant's] impairment(s) or [has] frequent exacerbations of [the claimant's] impairment(s) that

---

6.   "Frequent" is defined in the regulations in part as having "episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more."

result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation[.]" Id., (iv).

The regulations also require the Commissioner to compare the child's functioning to same-age, unimpaired children. 20 C.F.R. § 416.924a(b)(3). In addition, the Commissioner must consider all other factors that may affect a child's functioning, such as how well the child can initiate, sustain, and complete activities; how independently the child can function without extra help; the impact of structured or supportive settings on the child's ability to sustain adequate functioning; and school attendance and participation. 20 C.F.R. § 416.924a.

### Adult SSI Benefits

With respect to adult SSI benefits, the Commissioner utilizes a five-step process in evaluating such claims. See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[7] (2) has an impairment that is severe or a combination of impairments that is severe,[8] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[9] (4) has the residual functional capacity to return to his or

---

7. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

8. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R.§ 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2).

9. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If not, the sequential evaluation process proceeds to
(continued...)

her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[10]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

With regard to Morris's claim for child SSI, the administrative law judge, at step one of the sequential evaluation process, found that Morris had not engaged in substantial gainful activity at any time since the alleged disability onset date of January 16, 2006. Tr. 14.

At step two of the sequential evaluation process, the administrative law judge found that Morris, before attaining the age of 18, suffered from the following severe impairments: mood disorders, learning disorder, headaches, and back and neck pain. Tr. 15.

At step three of the sequential evaluation process, the administrative law judge found that Morris, before attaining the age of 18, did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. Tr. 19. He further found that Morris did not have an impairment or combination of impairments that functionally equaled the listings. Tr. 19. Specifically, he found that Morris had less than marked limitations in acquiring and using information, attending and

---

9. (...continued)
the next step.

10. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

completing tasks, interacting and relating to others, and no limitations in moving about and manipulating objects, caring for herself, and health and physical well-being. Tr. 18-22. In light of the fact that Morris did not have an impairment or combination of impairments that met or medically equaled, or functionally equaled, a listed impairment, the administrative law judge concluded that Morris was not disabled as defined by the Social Security Act, at any time prior to attaining age 18.

Consistent with his findings regarding entitlement to child SSI benefits, at step one of the sequential evaluation process used to analyze adult SSI claims, the administrative law judge found that Morris had not engaged in any substantial gainful activity since the alleged disability onset date of January 16, 2006, and at step two suffered from the same severe impairments. Tr. 23.

At step three, the administrative law judge found that Morris does not have an impairment or combination of impairments which meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. Tr. 23.

During the hearing on February 3, 2009, the administrative law judge took testimony from a vocational expert to determine whether or not jobs exist in the economy for an individual with the education, lack of work background, and physical and mental limitations of Morris. Specifically, the administrative law judge asked the vocational expert to consider a hypothetical individual who could perform light work with a sit/ stand option and could understand, remember and carry out simple instructions, make simple work-related decisions, and respond appropriately to supervision, co-workers, usual work situations and changes in a routine work setting. Tr. 39-40.

In response to that hypothetical question, the vocational expert stated that the individual could perform work as a sorter, tagger, folder, packager and assembler. Tr. 40.

In addressing step four of the sequential evaluation process in his decision, the administrative law judge found that Morris had no past relevant work but that Morris had the residual functional capacity to perform light work with the limitations noted above.[11]

At step five of the sequential evaluation process, the administrative law judge concluded that Morris was not disabled because Morris could perform the jobs identified by the vocational expert and that there were significant numbers of such jobs in the national economy.

The administrative record in this case is 269 pages in length, primarily consisting of medical records. Morris makes two arguments. First, Morris argues that the administrative law judge failed to appropriately consider the testimony of Michael Lavin, M.D. Second, Morris

---

11. The terms sedentary and light work are defined in the Social Security regulations as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967.

argues that the administrative law judge failed to appropriately develop the record. We have thoroughly reviewed the record in this case and find no merit in Morris's arguments. The administrative law judge did an adequate job of reviewing Morris's background and medical records in his decision. Tr. 10-25. Furthermore, the brief submitted by the Commissioner sufficiently reviews the evidence in this case. Doc. 14, Brief of Defendant. In this order, we will only comment on some of the evidence which is relevant to the disposition of the case.

Initially, it should be noted that no treating physician, psychiatrist or psychologist has opined that Morris is totally disabled. No treating source has stated that Morris is unable to engage in the limited range of light work identified by the vocational expert and adopted by the administrative law judge in his decision.

Dr. Lavin did not testify in this case. Furthermore, Dr. Lavin in his treatment notes consistently reported unremarkable mental status findings and assessed Morris with Global Assessment of Functioning (GAF)[12] scores ranging from 50-60. Tr. 153, 157, 230, 235, 238-43 and 248-253.

In May, 2007, Peter Cartaginese, M.D., evaluated Morris and concluded after conducting a physical examination that "[t]here does not seem to be any reason for her physical complaints."

---

12. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. Our review of the record revealed 9 GAF scores in the record. Three GAF scores of 50 and six GAF scores above 50.

Tr. 170-172.[13]  In September, 2007, Paul Taren Ph.D., a psychologist, reviewed the medical evidence at the request of the Bureau of Disability Determination and concluded that Morris was able to carry out simple, routine tasks and that she was functional from a psychiatric standpoint. Tr. 187-202.  Also, Sue LaBar Yohey, M.Ed., concluded that Morris was able to function generally well with respect to understanding and remembering short simple instructions and carrying out short and simple instructions.  Tr. 184-185.  Dr. Yohey also found that Morris functioned satisfactorily with respect to understanding and remembering detailed instructions, carrying out detailed instructions, making judgements on simple work-related decisions, interacting with the public, supervisors and co-workers; responding to work pressures in a usual work setting and to changes in a routine work setting.  Id.  Furthermore, in February, 2006, Morris was evaluated by the Athens Area School District.  Tr. 84-94.  The evaluation revealed that Morris's overall intellectual ability was in the low average range[14] and there was no evidence of a specific learning disability.  Id.

Counsel for Plaintiff attached to his brief a report of a psychological evaluation dated February 4, 2011, performed by Lynette G. Ruch, Ph.D.  This evaluation was conducted almost 2

---

13.   The neurologically portion of the physical examination revealed that Morris was oriented to person, place and time, and

> [m]emory, mentation, and speech appear within normal limits. Cranial nerves II through XII are intact and symmetrical.  Sensation is intact to light touch. Deep tendon reflexes are within normal limits. Strength is essentially normal in all extremities, or at least symmetrical.  Her grip is 100 bilaterally.  She states she is ambidextrous..

Tr. 170.

14.   On the Woodcock Johnson-III Test of General Intellectual Ability (GIA) Morris received a score of 87. Tr. 85-86. "GIA is a broad measure of intellectual ability derived from the seven broad cognitive factors, Valerie obtained a General Intellectual Ability Standard score of 87, placing her in the 20th percentile and in the low average range. There is a 95% probability that if given the test again under similar circumstances, she would score between 84 and 91." Tr. 86.  A score of 90 to 110 is considered average. Id.

years after the administrative law judge issued his decision and six months after the Appeals Council declined to review the administrative law judge's decision. There is no indication in the report that Dr. Ruch considered the evidence contained in the administrative record, including the testing by the Athens Area School District. It appears that Dr. Ruch primarily relied on her interview with Morris and intellectual testing, the Wechsler Adult Intelligence Scale - Fourth Edition. Dr. Ruch indicated that Morris was "functioning within the borderline range of mental retardation" and merely concluded that Morris "is unlikely to be successful in a competitive job market."

Evidence submitted after the administrative law judge's decision cannot be used to argue that the administrative law judge's decision is not supported by substantial evidence. Matthews v. Apfel, 239 F.3d 589, 594-595 (3d Cir. 2001). The only purpose for which such evidence can be considered is to determine whether it provides a basis for remand under sentence 6 of section 405(g), 42 U.S.C. Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under sentence 6 of section 405(g) the evidence must be "new" and "material" and a claimant must show "good cause" for not having incorporated the evidence into the administrative record. Id. Morris has not shown "good cause" for having failed to submit the evidence to the administrative law judge. Furthermore, we are not convinced the evidence is "new" or "material." See Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984)[15]; Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997); Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993); Willis v. Sec'y of Health and Human Servs., 727 F.2d 551, 554 (6th

---

15. "Material" means that the evidence is "relevant and probative." 745 F.2d at 833. The evidence must create a reasonable possibility that the new evidence would have changed the administrative law judge's decision had it been presented to him. Id. Also, the evidence must relate to the relevant time period, i.e., prior to the administrative law judge's decision. Dr. Ruch did not indicate that she was giving a retrospective opinion. There must be "'some justification for the failure to acquire and present such evidence'" to the administrative law judge. 745 F.2d at 834 (quoting Brown v. Schweiker, 557 F.Supp. 190, 192 (D.C.Fla. 1983).

Cir. 1984). Also, because SSI is a needs-based program, Morris has the option to file a new application for supplemental security income benefits based on this alleged new evidence.

As for Morris's argument that the administrative law judge failed to develop the record, an administrative law judge does not need to further develop the record if the evidence received is adequate for the administrative law judge to determine whether the claimant is disabled. See 20 C.F.R. § 416.912(e). The record contained Morris's school records, including the records of intellectual testing, as well as the reports and the opinions of Dr. Cartaginese, Dr. Taren and Ms. Yohey. Morris has not convinced us that there was insufficient evidence in the record for the administrative law judge to make an informed decision.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner. An appropriate order follows.

Date: December 1, 2011

United States District Judge

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALERIE N. MORRIS, | : |
| Plaintiff | : |
| | : No. 4:10-CV-2206 |
| v. | : |
| | : (Judge Nealon) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant | : |

## ORDER

AND NOW, this 1st day of December 2011, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of the Commissioner and against Valerie N. Morris as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Valerie N. Morris child and adult supplemental security income benefits is affirmed.

3. The Clerk of Court shall **CLOSE** this case.

*[signature]*
_____
**United States District Judge**